Thank you very much. We had some IT help here, so thank you. All right, the next case is White v. City of Chicago. Good morning, Your Honors, and may it please the Court. There are two issues in this appeal. The first involves an arrest warrant. The practice of the Chicago Police Department for search warrants is for the officer to prepare and to submit to a state's attorney for review and then submit to a judge a detailed affidavit from which you could look at the four corners of the affidavit and conclude that there is or is not probable cause to issue the search warrant. The practice for arrest warrants is somewhat different. What happens is that there's a document called a Complaint for Preliminary Examination in Felony Cases, which consists of the conclusory statement that a particular person has at a date and time. The person who signs that Complaint for Preliminary Examination averts under oath that that's true. That Complaint for Preliminary Examination is presented to a judge. From this record, there's no other document presented to the judge. In this case, Officer O'Donnell presented 50 complaints for preliminary examination and obtained 50 arrest warrants from a judge. And what this case is about is whether the facts presented to the judge before he signed the arrest warrant for Mr. Wright measured the standards required for probable cause. That's important because Mr. Wright was arrested in a dwelling where he had a property interest, and unless the officer had a warrant of some sort, they were not authorized to enter that dwelling. Mr. Flaxman, did Officer Lipsy have probable cause to arrest Wright on July 31, 2012, when he witnessed the controlled purchase and personally participated in the investigation? Well, before I answer that, let me say that it doesn't matter if he had probable cause or not. Why don't you answer the question, then you can tell us why it doesn't matter, Counsel. No, he did not have probable cause. If we look at the NAGIS report, which is the only basis for the officer's knowledge of what happened, and the NAGIS report is in the short appendix at page 28, all that he knew was that somebody who was said to be a cooperating individual, an FBI cooperating individual, was searched, was put into a vehicle that was searched, and was sent out to do a drug deal. The officers, it reports that the officers observed the CI approach the two individuals. Why doesn't it provide probable cause by at least a 50-50 shot as to each of the two, Chapman and White? Because the officers didn't see a hand-to-hand transaction. No, he saw, Officer Lipsy reported that he saw White participate in the drug sale. I'm sorry to interrupt with the long distance. Yeah, I know, I'm sorry, too, but go ahead. Well, that's what the officers, that's what the city maintained the officer said, but what the NAGIS report says is that the CI engaged in a conversation where they were observed walking behind the bus shelter. There's nothing in there about who said what to whom, what words were spoken, whether Mr. White was involved in that conversation, whether he was close enough to hear it. This would have been a lot better affidavit if they had a statement saying, we spoke to the CI and he told us that Mr. White and the other person there, Mr. Chapman, sold him drugs and they said we have a lot more and here's the money and they both took it and put it in their pockets. We don't have anything like that. What we have is that Chapman and White and the CI walked southbound towards the CI's vehicle where Chapman and White then turned back and began walking northbound on Sacramento while the CI entered his vehicle. We don't have anything about a hand-to-hand transaction or exchange of anything. We have something and then we have later that they searched the CI and found some drugs that were retrieved by a police officer. That really falls short of probable cause and that's why actually this case was brought in state court rather than being brought in federal court because it's a garbage case. They didn't really have any basis to say that Mr. White was involved in that, especially when the surveillance video shows that Mr. White was 30 feet away from the conversation between Mr. Chapman and the CI. It might be that Mr. White had guilty knowledge of what was going on, but if they told everything to the judge about what happened, he wouldn't have issued the warrant. But the point that, the reason why I tried not to answer this question first and I apologize for not answering it first, is that it doesn't matter how much probable cause they had or whether they could have gotten a warrant. We have the warrant clause which is a very important part of the Fourth Amendment. It requires the judge to- Well, here's why I think it matters. I think it matters because if White could have been arrested right then, how was he harmed by being arrested later? His privacy was invaded when the officers came into the home where he was with an invalid warrant. If they had probable cause to arrest him on the street, we would not have this warrant claim. We would be talking about probable cause. But they used the arrest warrant to go into the dwelling where he had a protected privacy right and unless we want to read the warrant clause out of the Fourth Amendment, I don't think anybody here wants to do that. We have to say it's the judge who must make a finding of probable cause, not whether there could have been probable cause like in Byers v. U.S. or Whitley v. Warren. If maybe they gave more evidence, there would have been probable cause or there could have been probable cause, but they didn't do that. It's the judge who has to say whether this makes the determination, not the police officer, not the state's attorney. And we have a case that is very, very close. It's identical from Chief Judge Wood in the Fifth Circuit, that Spencer v. Staten case. Nobody knew what they told the judge. And the Fifth Circuit said, well, then the judge can't give probable cause. You can't grant summary judgment.  Well, you know, I understand that Officer O'Donnell couldn't recall his exact words to the court when he presented the criminal complaint and testified under oath. But in his deposition, he said he told the court that White was a named offender in a drug transaction based on the Nagus report. So, Mr. Paxman, why wouldn't that be enough? Well, on this record, viewed in the light most favorable to the plaintiff, we could say what Officer O'Donnell said, I read the Nagus report to the judge after being sworn under oath. Judge, I read the Nagus report, and I believe that it set forth sufficient probable cause for you to issue a warrant. And Judge Ford could say thank you and then sign the warrant. Nobody said anything else. Well, you had plenty of opportunity to ask Officer O'Donnell to elaborate on what happened, right? That's true. And every time I look at a deposition, I think of the question that should have been asked and wasn't asked. But we didn't move for summary judgment. The city moved for summary judgment. It was their burden to show that the judge had facts before him that set out probable cause. And they didn't do that. They said he made a statement that could have been exactly what I just read. I read the report, and I believe it sets forth probable cause. The judge says, okay, fine. I'm going to sign this one and the other 50 or 49 arrest warrants based on that statement. Officer O'Donnell could have said, I've read all the reports, and all of these arrest warrants are based on probable cause. And then the judge would have just signed them. We have a very strange system in Chicago and in Illinois about issuing arrest warrants. The police officers can pick which judge they want to issue it. They can meet with the judge at his home, in court, at the gym. Is it your contention, counsel, that that conversation should be held on the record? Oh, it most definitely should be held on record. If I was rewriting the Fourth Amendment, I would require that, or if I was rewriting the Code of Criminal Procedure in Illinois, I would say that there has to be an affidavit, the four corners of which sets out probable cause for any kind of warrant. If I was writing a Chicago Police Department general order, I would say there has to be the same kind of detailed, specific affidavit that we require for search warrants. Some states in this circuit require the affidavit. No, and we're not making that point in this case, that it's not valid if it's not in writing. But I think it's a terrible situation, not a terrible situation, but in every case where there's an arrest warrant which is used to enter a dwelling and there's no record of what was actually said, I think there has to be a trial to decide if there was probable cause presented to the judge. It would be much better if there was a record of that. And I'll stand on the brief for the other. Thank you, Mr. Faxman. May it please the Court. Judgment for defendants on all of White's claims was proper. To begin, summary judgment was proper on White's Fourth Amendment claim against Officer O'Donnell. Although White right now in oral argument has challenged probable cause in the Nagus report, it should be noted that he did not do that at any point in his briefing in this case, and he's therefore waived or abandoned any claim that the Nagus report did not present probable cause. And, in fact, the report did present probable cause to believe that Mr. White was a participant. How do we know what was said? Well, let's take this one step at a time, counsel. Would you agree that the written submission to the judge failed to satisfy the warrant clause? The complaint itself would not satisfy probable cause. Okay. So the case then depends upon what was said in front of Judge Ford, correct? That's correct, Your Honor. So what do we have? We have testimony. How do we decide beyond reasonable dispute that sufficient showing was made? We have testimony at his deposition from Officer O'Donnell that he provided sworn testimony to Judge Ford that Mr. White had been identified as an offender in a drug transaction. He stated that his statement was under oath, it was based on the Nagus report, and specifically on the identification of Mr. White having participated as an offender in a drug transaction. That is sufficient for probable cause. All that is required for probable cause, it's a low standard, is that someone has identified to a police officer that the person who is being arrested committed a crime. That's what we have here, and that's sufficient. But Officer O'Donnell had no personal knowledge of any of the facts in the complaint, and Officer Lipsy did not sign the Nagus report under oath. How could the Court test the truth of the assertions in the criminal complaint without any witness with personal knowledge present? Well, respectfully, Your Honor, personal knowledge is not required for probable cause. That's well established in the case law. In fact, an officer may rely on another officer's information to him. He may even rely on a lay witness's information to him, and it may even be a single lay witness. There's no requirement that the information provided to the officer be under oath to establish probable cause. So long as there is a reasonable basis to believe that a crime was committed, then that's enough for probable cause. And it can be a single source. It doesn't have to be an under oath source, and that's what we have here. Well, you know, it seems to me that Officer O'Donnell had no more knowledge of the facts than anyone who read the Nagus report could have. Would it have been sufficient to submit the Nagus report along with the conclusory criminal complaint? What did Officer O'Donnell's testimony add beyond the contents of the unsworn police report? I don't believe it added anything, Your Honor, because Officer O'Donnell admits that he did not have personal knowledge. But, again, the Nagus report itself was a sufficient basis for probable cause. And for that reason, Officer O'Donnell's personal knowledge wasn't necessary to the establishment of the Nagus report. Was the Nagus report presented to the judge who issued the warrant? Does the record tell us if the Nagus report was available for the judge's review on request? The record does not tell us one way or the other, Your Honor. But what we do know is that Officer O'Donnell said that he provided sworn testimony based on the identification of Mr. White as an offender in a drug transaction. As part of his effort to seek all of these warrants from a larger criminal drug conspiracy that had been investigated by the FBI and by CPD using confidential informants for a period of nearly two years and that the Nagus report itself was directed specifically at Chapman, Mr. White's brother, and Mr. White only in that Officer O'Donnell stated that he gave a statement based on that specific report which was directed at those two and the identification of Mr. White specifically as an offender. Could you address Mr. Flaxman's hypothetical in which Officer O'Donnell says to the judge, I've read a police report and it's sufficient to establish probable cause? Wait. A police officer who has read a report from another police officer that established probable cause would suffice for probable cause to seek a warrant? Would? It does, yes. If he simply says, Judge, there's probable cause. No, but if he says – Another officer told me so. If another officer – I'm sorry. If he tells the judge another officer has identified this person as committing an offense in a report and I've read that report, that's probable cause, then, yes, that's sufficient. Really? Yes. The officer is allowed to rely on another officer's information to him as long as it's reliable to establish probable cause. Of course, but doesn't he have to at least provide some detail to the judge? I'm sorry. Now I understand your question. So you're saying if the report only said point blank that there's probable cause to arrest the person. If O'Donnell had simply said, I've read the NAGUS report from the officers on the scene, Judge, it's enough for probable cause. He does need to give some information as to why he believes it's enough. I'm sorry. I misunderstood. And how do we know that happened here? Because he specifically said that he gave a statement based on the identification in the report. Well, the adverb specifically in that sentence is interesting. Right. Well, that is the exact – I mean, the exact language that he used was – he was asked, was your sworn statement based on the report? And he said, correct. It was based on Vonzo White being named as an offender in a narcotics transaction. The next question was, based on exhibit number four, which was the report? And he said, correct. So he specifically said that he gave a statement based on that report's identification of Mr. White as an offender in a drug transaction. And just briefly, I'd like to also address the idea of qualified immunity here. In addition, Officer O'Donnell was also entitled to a summary judgment on qualified immunity because a reasonable officer in his position would have believed that that statement that he made under oath was sufficient to receive a warrant and would have no reason to doubt that he did have probable cause to seek the warrant at the time. There's no allegation that Officer O'Donnell engaged in any false statement or any misleading of the court. And for that reason, qualified immunity was proper for Officer O'Donnell. Finally, just quickly, a little bit on the Monell claim, White is wrong that the city has a policy of just getting arrest warrants on conclusory complaints. That's what's alleged, correct? That's correct. So how do we resolve this on a motion to dismiss? Well, here, I mean, that's the allegation of the policy. But it's clear that, I mean, on a motion to dismiss, well, we're beyond the motion to dismiss at this stage. Well, if summary judgment was proper for Officer O'Donnell, then we don't reach the Monell claim. That's correct, because there's no unlikely. But if summary judgment for O'Donnell was premature, then we have to deal with a Monell claim that was dismissed on the pleadings. That's correct, Your Honor. And it's hard to reconcile that decision with Leatherman. Well, Your Honor, there's a few reasons. The dismissal initially was correct because the complaint only alleged a widespread practice. There was no policymaker policy. Custom policy or practice. Isn't that the language of Monell? That's correct. But the practice claim was based only on Mr. White's personal experience, and the case law is clear that that's not sufficient. What do you mean, based upon? The only allegations were that Mr. White experienced this and that that, therefore, is sufficient for a widespread practice. He's not saying that that's a sufficient evidentiary basis to show. He's alleged there's a custom, a widespread practice. Why is that not sufficient under Leatherman? Because it requires more than just one instance of that. How many? In the pleadings, in light of Leatherman. Right. I mean, this Court has dismissed similar cases where the pleadings themselves only made allegations of one or two or a handful of actions that weren't enough to get to a widespread claim. There's no black and white line. Could you address my question in terms of Leatherman, which is the controlling precedent from the Supreme Court? Well, Your Honor, I don't think that there is a bright line rule as to how much must be alleged, but it must be beyond the single incident of the plaintiff himself. There must be more to say. More alleged? Okay, he's alleged a widespread practice. It happens all the time. But he hasn't alleged that it happened to anyone else besides him. He said it happened all the time. So one more? All I can say is that this is insufficient, Your Honor. This is not a pleading rule. But judgment for the city may be affirmed on any other ground that's sufficiently supported in the record, and here Mr. White clearly does not have standing to bring the claim that there is a widespread practice of obtaining warrants based solely on a conclusory complaint, because we know that Illinois law requires more than that to obtain a warrant, and also here the facts showed that that didn't even happen to him. Wait a minute. It's undisputed that there was more than a complaint. Excuse me. Are you arguing that because Illinois law requires more, we would have to assume that it is always complied with? No, Your Honor. I'm saying that Mr. White's allegation is that our policies for search warrants and arrest warrants are somehow deficient, but really what I'm trying to say is that... No, your arrest warrant. That's correct. I'm sorry, are different, that's evidence that the arrest warrant policy is somehow deficient, but that just reflects the Illinois requirement that a judge must hear actual testimony in order to issue a warrant under Illinois law, and in fact the facts of this case show that that occurred here. There's no dispute that Officer O'Donnell did in fact give a sworn statement, and for that reason Mr. White was not harmed by any alleged practice of obtaining warrants solely on a complaint, and for all these reasons, Your Honors, we would respectfully ask that you affirm the judgment below. Thank you. Thank you, Mr. Hubbard. Thanks to both counsel. The case will be taken under advisement.